## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| | § | |
| DAVID ISRAEL SANCHEZ, | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-11-2084 |
| | § | |
| UNITED STATES SECRETARY OF STATE | § | |
| HILLARY RODHAM CLINTON, *et al.*, | § | |
| Respondents. | § | |

### MEMORANDUM AND OPINION

The petitioner, David Israel Sanchez, has filed a petition for a writ of mandamus under 28 U.S.C. § 1361. Sanchez challenges the decision of the Secretary of State to deny his passport application and seeks a declaration that he is a United States national entitled to a passport. The respondents moved to dismiss the petition in part. (Docket Entry No. 8). Sanchez, with the assistance of counsel, has responded, (Docket Entry No. 10), and the respondents have filed a reply, (Docket Entry No. 11). After careful review of the motion, response, and reply; the record; and the applicable law, this court grants the respondents' motion for the reasons explained below.

### I.       Background

Sanchez sues Hillary Rodham Clinton, Secretary of the United States Department of State, and Benita Jones-Burnett, Acting Director of the Charleston Passport Center. Sanchez alleges that he was born on March 14, 1988 in Brownsville, Texas. He alleges that on March 15, 1988, Vicenta Vitte, a midwife, signed the birth certificate as the birth attendant, and that on April 19, 1988, Vitte filed the certificate with the local registrar in Cameron County, Texas. (Docket Entry No. 1, Complaint, Ex. A, p. 1).

Sanchez applied for a United States passport on July 31, 2005. (Docket Entry No. 8, Respondent's Motion to Dismiss, Ex. 1, p. 1). The State Department denied the application on September 15, 2005, stating as follows:

> The records of this office indicate that on July 31, 2005 you executed a passport application at the Houston Passport Agency in Houston, Texas. As proof of United States citizenship, you submitted a City of Brownsville, Texas birth certificate indicating you were born on March 14, 1988 in Brownsville, Texas. Due to your noninstitutional birth filed by a known midwife, Vicenta A. Vitte, suspected of filing fraudulent Texas birth records, we requested verification of the birth certification through Texas Department of Health. They indicated your birth record had been flagged because of evidence that you were born in Mexico. A Mexican birth registration was located stating, Israel Sanchez Reyes was born on October 19, 1987 in [] Matamoros, Tamaulipas, Mexico. Your father, Marcelino Sanchez and your mother, Elizabeth Reyes Brito, registered your birth on October 21, 1987. A copy of the Mexican birth certificate is enclosed. Due to the above information and the lack of secondary evidence, the Houston Passport Agency has no recourse but to deny your application for a passport. The local office Department of Homeland Security, Citizenship and Immigration Services, may be able to assist you by providing information about your travel documents or procedures for possible naturalization as a United States citizen. Once you acquire United States citizenship, you may execute another application for a United States passport. . . .

*Id.*

Sanchez states that the trouble with his birth certificate began when the State Registrar received documents from the Immigration and Naturalization Service (INS) indicating that the information on the certificate was false. Based on the information from INS, on June 27, 2001, the State Registrar attached an addendum to the Delayed Certificate of Birth for Sanchez. The State of Texas denied issuance of a certified copy of Sanchez's birth certificate. On January 31, 2006, the Texas Department of Health held a hearing on this denial. On March 21, 2006, a hearing examiner for the Texas Department of Health ordered that the addendum to Sanchez's Texas birth certificate

be removed because the conflicting Mexican birth record was not supported by a preponderance of the evidence. According to Sanchez, the examiner ordered the State Registrar to issue Sanchez a certified copy of his Texas birth certificate. Sanchez alleges that the State of Texas determined that he was born in Brownsville, Texas, and that this decision is binding on federal authorities.

Sanchez again filed for a United States passport on February 26, 2010. On July 26, 2010, the State Department issued a letter requesting more information. On July 28 and October 22, 2010, Sanchez provided the State Department with supplemental information to support his claim of birth in the United States. Sanchez submitted the March 2006 decision from the Texas Department of Health; a vaccination record and accompanying letter from Dr. Fernandez, a Mexican doctor, stating that he administered Sanchez's vaccinations; and a letter from a medical laboratory in Brownsville, Texas, indicating that Sanchez's mother had prenatal lab work done in Brownsville on February 13, 1988, one month before giving birth. (Docket Entry No. 1, Complaint, pp. 7-8).

On March 4, 2011, the State Department issued a letter again denying Sanchez's application for a United States Passport, stating as follows:

> The records of this office indicate that you executed a passport application on February 26, 2010 at the Fairbanks Station Post Office, Houston, Texas. In support of your claim of birth in the United States, you submitted a birth certificate issued by the Bureau of Vital Statistics State of Texas. The certificate indicates you were born on March 14, 1988 in Brownsville, Texas. Your birth record was filed on April 18, 1988 by a birth attendant. As explained in our previous letter, this birth attendant is suspected of submitting false birth records. An individual applying for a United States passport has the burden of proving by a preponderance of the evidence through documentary evidence his or her United States citizenship or nationality(22 C.F.R. 51.40, 51.41). Because your birth record was filed by a birth attendant who the Department has reason to believe is not reliable, you were asked to provide supplementary documentation to support your claim of birth in the United States. In response to the Department's letter seat on July 26, 2010, you

provided the Department with supplemental information on July 28, 2010 and again on October 22, 2010.

The documentation you provided to support your claim of birth in the United States is not sufficient to establish by a preponderance of the evidence that you were born in the United States. There exists a foreign birth record indicating that your birth occurred in Mexico. Therefore, we are unable to determine that you are entitled to a passport and your application is denied.

(Docket Entry No. 1, Complaint, Ex. D, p. 1).

Sanchez filed the current suit seeking review of adverse agency action. As the basis for this court's jurisdiction, Sanchez relies on the following statutes:

    (1)     the Mandamus Act,  28 U.S.C. § 1361;

    (2)     the All Writs Act, 28 U.S.C. § 1651;

    (3)     federal-question jurisdiction, 28 U.S.C. § 1331;

    (4)     the Declaratory Judgment Act, 28 U.S.C. § 2201;

    (5)     the Administrative Procedure Act (APA), 5 U.S.C. § 702 *et seq.;*

    (6)     22 U.S.C. § 211a *et seq.,* governing the State Department's authority to grant, issue and verify passports; and

    (7)     8 U.S.C. § 1503.

Sanchez also asserts that his case presents issues under the Tenth and Fourteenth Amendments of the United States Constitution, as well as the Full Faith and Credit Clause of Article IV, § 1.

The respondents move for partial dismissal of Sanchez's complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), on the basis that several of Sanchez's statutory claims fail for want of subject-matter jurisdiction, and that other parts of his complaint fail to state a claim upon

which relief can be granted. The respondents concede that Sanchez has stated a claim for United States citizenship under 8 U.S.C. § 1503(a). The respondents argue that this court lacks jurisdiction to consider the remaining alleged statutory violations and that the complaint fails to state a Fifth Amendment due process violation. The arguments are addressed below.

## II.      The Legal Standard

### A.      Federal Rule 12(b)(1)

The court must dismiss a case when the plaintiff fails to establish subject-matter jurisdiction. FED. R. CIV. P. 12(b)(1). "It is incumbent on all federal courts to dismiss an action whenever it appears that subject matter jurisdiction is lacking." *Stockman v. Fed. Election Comm'n,* 138 F.3d 144, 151 (5th Cir. 1998). A case is properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.,* 143 F.3d 1006, 1010 (5th Cir. 1998) (internal quotation marks and citation omitted). The burden of establishing federal jurisdiction rests on the party seeking the federal forum. *Stockman,* 138 F.3d at 151.

### B.      Federal Rule 12(b)(6)

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, a court must "accept the complaint's well-pleaded facts as true and view them in the light most favorable to the plaintiff." *Johnson v. Johnson,* 385 F.3d 503, 529 (5th Cir. 2004). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief - including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor,* 503 F.3d 397, 401 (5th

Cir. 2007) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).  That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, ___, 129 S.  Ct.  1937, 1949 (2009) (quoting *Twombly,* 550 U.S. at 570).

III.    **Subject-Matter Jurisdiction**

   A.    **The Declaratory Judgment Act: 28 U.S.C. § 2201**

   The Declaratory Judgment Act, 28 U.S.C. § 2201, does not create an independent basis for district court jurisdiction. Rather, it provides an additional remedy when jurisdiction already exists. *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671-72 (1950).  Sanchez seeks declaratory relief based on the theory that he has been denied rights and privileges claimed as a United States national, within the meaning of 8 U.S.C. § 1503, by virtue of the denial of his application for a United States passport.

   Sanchez seeks a declaration that he is a United States citizen.  The respondents concede that 8 U.S.C. § 1503 provides a basis for this court's jurisdiction. *See Patel v. Rice,* 403 F. Supp. 2d 560 (N.D. Tex. 2005).  He has a Declaratory Judgment Act claim as a result.

   B.    **The All Writs Act**

   Sanchez argues that the All Writs Act, 28 U.S.C. § 1651, authorizes this court to issue a writ of mandamus requiring the State Department to issue him a United States passport.  The All Writs Act provides that federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). "The All Writs Act" creates no jurisdiction in the district courts" but "empowers them only to issue writs in aid of jurisdiction previously acquired on some other independent ground." *Brittingham v.*

*Comm'r,* 451 F.2d 315, 317 (5th Cir. 1971).  Courts construe the act narrowly and apply it only under "such extraordinary circumstances . . . that indisputably *demand* such a course of action as absolutely necessary to vouchsafe the central integrity of the federal court judgment." *Texas v. Real Parties in Interest,* 259 F.3d 387, 395 (5th Cir. 2001).  Because the relief Sanchez seeks would not be in aid of the jurisdiction of a federal court, this claim lacks merit. 28 U.S.C. § 1651(a); *see Morris v. T E Marine Corp.,* 344 F.3d 439, 443 (5th Cir. 2003) (citing *Syngenta Crop Protection, Inc. v. Henson,* 537 U.S. 28 (2002)).  This action may not proceed under § 1651.

### C.      The Administrative Procedures Act

Sanchez seeks review of an adverse agency action under the Administrative Procedures Act. Sanchez and the respondents acknowledge that 8 U.S.C. § 1503 provides a basis for a direct review of agency action.  However, the parties disagree as to whether this basis precludes Sanchez's assertion of jurisdiction under the APA.  Under 5 U.S.C. § 704, "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704.  The APA's waiver of sovereign immunity is triggered only if there are no other judicial remedies available.  Courts  assess the adequacy of alternative statutory remedies to determine whether they preclude challenges to agency action under the APA. *See El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. U.S. Dep't of Health and Human Servs.,* 396 F.3d 1265, 1273-74 (D.C. Cir. 2005) (examining whether the relief available under 42 U.S.C. § 233 was sufficient to preclude APA review of HHS actions and concluding that it was not). This determination appears to hinge on whether the alternative statutory remedies are "adequate" to redress the injury alleged, although the alternative need not be "more effective" than APA review. *See Council of and for the Blind of Delaware Cnty. Valley, Inc. v. Regan,* 709 F.2d 1521, 1532-1533

(D.C. Cir. 1983).

Under this analysis, 8 U.S.C. § 1503(a) provides an adequate remedy to address Sanchez's injuries. That precludes review under the APA.  Under § 704, review of agency action under the APA is precluded because the relief that Sanchez seeks—a judicial declaration of citizenship and entitlement to a passport—may be directly sought through 8 U.S.C. § 1503(a).

### D.    22 U.S.C. § 211a

Sanchez asserts that under 22 U.S.C. § 211a, the United States Department of State must issue him a United States passport because he provided the information needed to prove that he was born in this country and is a United States citizen. The respondents argue that 22 U.S.C. § 211a is not a jurisdictional statute. (Docket Entry No. 8, pp. 7-8).  Sanchez did not address this argument in his response to the motion to dismiss.  In opposing the  motion to dismiss, Sanchez presented arguments on the APA, his constitutional right to travel, and the Full Faith and Credit Clause. Sanchez's response did not discuss 22 U.S.C. § 211a.  Sanchez has therefore abandoned this claim. *See Black v. N. Panola Sch. Dist.,* 461 F.3d 584, 588 n.1 (5th Cir. 2006) (citing *Vela v. City of Houston*, 276 F.3d 659, 679 (5th Cir. 2001); *see also Ervin v. Sprint Comms.,* 364 F. App'x 114, 117–18 (5th Cir. 2010)(quoting *Vaughner v. Pulito,* 804 F.2d 873, 877 n.2 (5th Cir. 1986)).

### E.    The Mandamus Act: 28 U.S.C. § 1361

Sanchez asserts a claim under the Mandamus Act, 28 U.S.C. § 1361.  District courts have original jurisdiction over any action in the nature of mandamus to compel an agency to perform a nondiscretionary duty owed to a plaintiff.  This remedy is available only if all other avenues of relief are exhausted. *Heckler v. Ringer,* 466 U.S. 602, 616 (1984).  In *Cartier v. Sec'y of State,* 506 F.2d 191 (D.C. Cir. 1974), the D.C. Circuit held that mandamus was an inappropriate remedy for

contesting agency determinations as to nationality status because the remedies under 8 U.S.C. § 1503 are "more than adequate." *Cartier,* 506 F.2d at 199 (noting that mandamus is an "extraordinary remedy to be utilized only in the most compelling cases").  Sanchez's response to the motion to dismiss did not discuss his entitlement to relief under the Mandamus Act.  Sanchez has abandoned this claim. *See Black v. N. Panola Sch. Dist.,* 461 F.3d 584, 588 n.1 (5th Cir. 2006) (citing *Vela v. City of Houston*, 276 F.3d 659, 679 (5th Cir. 2001)). Alternatively, this court holds that Sanchez's request for a writ of mandamus is without merit as a matter of law and must be dismissed.

## IV.   The Constitutional Claims

### A.    Due Process

Sanchez contends that the respondents have deprived him of a right protected by the Fifth Amendment Due Process Clause.  Sanchez alleges that the respondents have endangered his fundamental right to travel by denying him a passport.

The Fifth Amendment states that  "no person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V. The Supreme Court has recognized a critical distinction between the right to travel and the freedom to travel internationally. The constitutional right of interstate travel is virtually unqualified.  *United States v. Guest*, 383 U.S. 745, 757-758  (1966); *Griffin v. Breckenridge,* 403 U.S. 88, 105-106 (1971).  By contrast, the 'right' of international travel has been considered to be no more than an aspect of the 'liberty' protected by the Due Process Clause of the Fifth Amendment. *Califano v. Aznavorian,* 439 U.S. 170, 176 (1978) (internal citations and quotation omitted); *see also Haig v. Agee,* 453 U.S. 280, 306 (1981) (The freedom to travel outside the United States "clearly is accorded less stature than the right to travel interstate.").  The ability to travel abroad "may be regulated within the bounds of due process."

9

*Aznavorian,* 439 U.S. at 176 (quoting *Califano v. Torres,* 435 U.S. 1, 4 n.6 (1978)).

As the respondents note, Sanchez is not subject to any governmental restraint that is not shared generally by the general public. Travel restrictions and passport regulations apply to all. United States citizens have long been required to present a passport to enter the United States after a trip abroad. *See* 8 U.S.C. § 1185(b). The Western Hemisphere Travel Initiative, implemented under the Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. 108-458, Title VII, § 7209, 118 Stat. 3823, extended this requirement to citizens returning from regions that were historically exempt, including Canada, Mexico, the Caribbean, and Bermuda. *See* 8 U.S.C. § 1185(b); 22 C.F.R. § 53.2. All passport applicants must prove their eligibility and may bring an action under 8 U.S.C. § 1503(a) if their application is denied.

Because Sanchez's passport application was denied for lack of the documentation that all citizens are required to provide, he does not allege facts showing that federal officials have imposed unconstitutional restrictions on his freedom of movement.  The WHTI is a reasonable means to effectuate Congress's purpose and is not a significant restraint on Sanchez's constitutional right to international travel.

In addition, Sanchez has failed to allege facts showing that his application was denied without due process.  To state a constitutional violation of the right to procedural due process, a plaintiff must allege facts showing that he was deprived of a protected liberty or property interest. *See Mathews v. Eldridge,* 424 U.S. 319, 332 (1976).  A plaintiff must then demonstrate that the deprivation occurred without constitutionally sufficient procedures.  *See Welch v. Thompson,* 20 F.3d 636, 640 (5th Cir. 1994).  The amount of due process owed is "flexible and calls for such procedural protections as the particular situation demands." *Mathews,* 424 U.S. at 334.

Sanchez was given the opportunity to submit his application and present his supporting documentation.  In a letter dated March 4, 2011, the National Passport Center advised Sanchez that his passport had been denied because the documentation he provided to support his claimed United States birth was not sufficient to establish it by a preponderance of the evidence.  (Docket Entry No. 1, Complaint, Ex. D, p. 1).  Sanchez does not allege facts showing that the request for documentation or the denial was procedurally improper.  Judicial review of Sanchez's citizenship status remains available under 8 U.S.C. Section 1503(a). Sanchez has not alleged a due process violation under the Fifth Amendment. *See Rios-Valenzuela v. Dep't of Homeland §.,* 506 F.3d 393, 401 (5th Cir. 2007) (holding that no due process right "inheres naturally" in a claim to citizenship itself).

### B.    The Full Faith and Credit Clause

Sanchez alleges that the Texas Department of Health determined by a preponderance of the evidence that he was born in the State of Texas.  Sanchez alleges that the respondents ignored full faith and credit  by not accepting the Texas Department of Health's decision.

Article I, § 8, cl. 4, of the Constitution provides: "The Congress shall have Power . . . To establish an uniform Rule of Naturalization."  The federal government has "broad constitutional powers in determining what aliens shall be admitted to the United States, the period they may remain, regulation of their conduct before naturalization, and the terms and conditions of their naturalization." *Plyler v. Doe,* 457 U.S. 202, 238 n.1 (1982) (Powell, J., concurring) (quoting *Takahashi v. Fish & Game Comm'n*, 334 U.S. 410, 419 (1948)).  The Supreme Court has traditionally shown great deference to federal authority over immigration and to federal classifications based on  alienage.   *See*, *e.g., Fiallo v. Bell*, 430 U.S. 787, 792 (1977) ("it is important to underscore the limited scope of judicial inquiry into immigration legislation"). "Power

11

to regulate immigration is unquestionably exclusively a federal power." *De Canas v. Bica,* 424 U.S. 351, 354 (1976).  Federal supremacy is rooted in the Constitution, which grants Congress authority to "establish an uniform Rule of Naturalization." U.S. CONST. art. 1, § 8, cl 4. Because the regulation of immigration is "a power affecting international relations," it "is to be regulated by treaty or by act of congress."  *Fong Yue Ting v. United States,* 149 U.S. 698, 713 (1893).  The Supreme Court has "long recognized the preeminent role of the Federal Government with respect to the regulation of aliens within our borders," *Toll v. Moreno,* 458 U.S. 1, 10 (1982). "The authority to control immigration . . . is vested solely in the Federal government." *Truax v. Raich,* 239 U.S. 33, 42 (1915). "[T]he States enjoy no power with respect to the classification of aliens," a power that is "committed to the political branches of the Federal Government." *Plyler v. Doe,* 457 U.S. 202, 225 (1982) (quoting *Hines v. Davidowitz,* 312 U.S. 52, 61 (1941); *Mathews v. Diaz,* 426 U.S. 67, 81 (1976)).

In *Bustamante-Barrera v. Gonzales*, 447 F.3d 388 (5th Cir. 2006), the Fifth Circuit rejected an argument that the Full Faith and Credit Act,  28 U.S.C. § 1738,[1]  required a federal court to recognize a state's divorce decree for the purpose of deciding immigration consequences.  The petitioner argued that when his mother was  naturalized, she had sole legal custody over him because an amended divorce decree retroactively granted her custody as of the date of her divorce. As a result, the petitioner argued, he could be given citizenship through his mother under the immigration statute, § 1432(a)(3).

The Fifth Circuit disagreed, stating as follows:

> Our refusal to credit the amended decree for purposes of federal

---

[1]     The Full Faith and Credit Act mandates that federal courts accord the same "full faith and credit" to state "judicial proceedings" as other courts of the state from which the state court judgment comes would accord the judgment. *Id.*

immigration law does not even implicate the Full Faith and Credit Act.  For purposes of § 1432(a), Petitioner's custody status prior to his eighteenth birthday is determined by federal law; it is *not* dependent on the law of any particular state.  True, his custody status under state law might provide evidence of his such status for federal naturalization purposes; yet, even for these purposes, we are not *bound* by California's determination of his legal relationship with his mother. Stated differently, even assuming *arguendo* that the state's amended decree retroactively altered Petitioner's relationship with his mother for some legitimate state purpose, we would not be bound to follow the amended decree in determining Petitioner's custody status for purposes of the subject section of the INA.    Federal naturalization law exists independent of state family law. Here, we do not question the amended decree's *validity* - a question that, in other circumstances, the Full Faith and Credit Act might prohibit our asking.  But the Full Faith and Credit Act certainly does not require us to accord that state decree conclusive effect in U.S. *naturalization* proceedings.

We are not the first court to address the effect of a *nunc pro tunc* order on a § 1432(a)(3) analysis. Facing similar circumstances in *Fierro,* the First Circuit rejected the assertion that a *nunc pro tunc* amended custody decree obtained for the express purpose of affecting the outcome of federal immigration proceedings satisfied § 1432(a)(3)'s "legal custody" requirement.  Born in Cuba, Fierro and his parents immigrated to the United States in 1970. When his parents divorced in 1973, his mother was granted custody in the divorce decree.  In 1976, Fierro became a LPR, and in 1978, when Fierro was still under the age of 18, his non-custodial father became a naturalized U.S. citizen. Twenty years later, while a middle-aged Fierro was facing removal proceedings, a Massachusetts court entered a *nunc pro tunc* order that granted his father legal custody effective retroactively to 1977.  To obtain that court order, both of Fierro's parents had expressly averred that the post-hoc "modification [of his custody status] is necessary for [him] to derive citizenship through his father and avoid being deported to Cuba."

The Massachusetts court acquiesced and entered the *nunc pro tunc* order, after which Fierro insisted that he was not removable because he had derived citizenship when his father was naturalized in 1978. As evidenced by the *nunc pro tunc* order, argued Fierro, he was in his father's legal custody at that time. The First Circuit rejected this argument, reasoning, *inter alia,* that reliance on such an order as the basis of derivative citizenship would open the floodgates for abuse,

"allow[ing] . . . state court[s] to create loopholes in the immigration laws on grounds of perceived equity or fairness."

The instant case is strikingly similar to *Fierro.* After Petitioner's removal proceeding had been initiated-which was years after he had reached the age of 18-Petitioner's mother was successful in having her 11 year-old divorce decree amended retroactively for the sole purpose of blocking her son's removal from the United States. We agree with the First Circuit that relying on such a *nunc pro tunc* order to recognize derivative citizenship would create the potential for significant abuse and manipulation of federal immigration and naturalization law. We therefore decline to credit it.

We should not, though, be seen as foreclosing any possibility that there could be a situation in which such a *nunc pro tunc* amended decree could enhance an alien's claim of derivative citizenship under § 1432(a). It is at least possible that circumstances could exist in which such a decree would legitimately demonstrate that an alien child had in fact been in the sole legal custody of his one naturalized parent prior to his eighteenth birthday. This, however, is not such a case. The record here confirms that Petitioner's mother sought the amended decree solely for the purpose of controlling immigration and naturalization law. We refuse to reward such blatant manipulation of federal law.

*Bustamante-Barrera*, 447 F.3d at 400-01 (footnotes omitted).

As in *Bustamante-Barrera,* the federal refusal to credit the Texas Department of Health decision that Sanchez was born in Texas does not implicate the Full Faith and Credit Clause. The determination of whether Sanchez was born in Texas is determined by federal law; it is not dependent on the law of any particular state. Even assuming that the State of Texas determined that Sanchez was born in Texas, neither the State Department nor a federal court would be bound to follow that decision in determining Sanchez's entitlement to a United States passport. The Full Faith and Credit Clause does not require the decision of the Texas Department of Health to be given preclusive effect in United States passport proceedings.

Sanchez contends that the respondents violated the Tenth Amendment of the United States

14

Constitution because the decision to deny his passport application impinges on a State of Texas decision that Sanchez was born in Texas.   The Tenth Amendment provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the states respectively, or to the people." U.S. CONST. amend. X.  While this language "confirms that the power of the Federal Government is subject to limits that may, in a given instance, reserve power to the States," *New York v. United States,* 505 U.S. 144, 157 (1992), no such limitation on federal authority applies here.   Because Congress has plenary authority over immigration, it may freely displace or preempt state laws, affecting immigration. *Herrera–Inirio,* 208 F.3d at 307.

A "passport" is defined as a "travel document issued by a competent authority showing the bearer's origin, identity, and nationality if any, which is valid for the admission of the bearer into a foreign country." 8 U.S.C. § 1101(a)(30). In the United States, only the Secretary of State has authority to grant, issue, and verify passports. *See* Exec. Order No. 11295, 31 F.R. 10603 (August 5, 1966), *codified as amended at* 22 U.S.C. § 211a.  Under this authority, the Secretary of State "may grant and issue passports" after considering "a written application" that meets certain criteria established by law.  *See* 22 U.S.C. §§ 211a, 213.  In particular, "[a] passport may be issued only to a U.S. national." *See* 22 C.F.R. § 51.2. A U.S. national is "a U.S. citizen or a U.S. non-citizen national." 22 C.F.R. § 51.1(l).  A "U.S. non-citizen national" is "a person on whom U.S. nationality, but not U.S. citizenship has been conferred at birth under 8 U.S.C. § 1408, or under other law or treaty, and who has not subsequently lost such non-citizen nationality." 22 C.F.R. § 51.1(m).  The respondents note that a valid passport is considered proof of citizenship. *See* 8 U.S.C. § 2705. Because of its legal significance, an applicant has the burden to establish that he is entitled to a passport by presenting proof of identity and citizenship. *See* 22 C.F.R. §§ 51.23, 51.40.  To meet this

15

burden, the applicant must provide documentary evidence that he or she is a U.S. national. 22 C.F.R. § 51.41. Primary evidence of nationality for a person born in the United States is an official birth certificate filed within one year of the date of birth. *See* 22 C.F.R. § 51.42(a). Alternatively, if an applicant's birth certificate is insufficient to qualify as primary evidence, secondary evidence "includes but is not limited to hospital birth certificates, baptismal certificates, medical and school records, certificates of circumcision, other documentary evidence created shortly after birth but generally not more than 5 years after birth, and/or affidavits of persons having personal knowledge of the facts of the birth." 22 C.F.R. § 51.42(b).

The record shows that Sanchez's passport application was denied because he failed to provide sufficient documentation showing that he was born in the United States and that he is, therefore, a citizen by birth. There are "two sources of [United States] citizenship, and two only: birth and naturalization." *United States v. Wong Kim Ark,* 169 U.S. 649, 702 (1898). The Fourteenth Amendment to the United States Constitution declares that "all persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States." U.S. CONST. amend. XIV. Persons who are born in the United States acquire citizenship by birth automatically. Persons born outside the United States acquire citizenship by birth only as provided by Acts of Congress. *Wong Kim Ark,* 169 U.S. at 703; *see also Miller v. Albright,* 523 U.S. 420, 424 (1998).

The respondents argue that the applicable statutes and regulations stress that only United States nationals are eligible for a passport, *see* 22 C.F.R. § 51.2(a), and give the State Department the sole authority to determine a person's eligibility for a passport. *See* 22 U.S.C. § 211a ("The Secretary of State may grant and issue passports, . . . and no other person shall grant, issue, or verify such passports."); 22 C.F.R. § 51.5(a) ("A passport authorizing officer may adjudicate applications and authorize the issuance of passports."). Nothing in the regulations suggest that the State

16

Department must defer to a state agency's administrative findings regarding a person's place of birth. Instead, the regulations impose an obligation on the applicant to establish that he is a United States national and that he is eligible for a passport. *See* 22 C.F.R. §§ 51.40, 51.41; *see also* 22 C.F.R. § 51.42(a), (b).  The regulations show that a birth certificate can serve as primary evidence of birth in the United States, *See* 22 C.F.R. § 51.42(a), but the regulations give the State Department the discretion to require additional evidence. *See* 22 C.F.R. § 51.45 ("The Department may require an applicant to provide any evidence that it deems necessary to establish that he or she is a U.S. citizen or non-citizen national, including evidence in addition to the evidence specified in 22 CFR 51.42 through 51.44.").  Sanchez cannot demonstrate that the State Department is required by either statute or regulations to defer to the State of Texas's administrative findings.

Sanchez's constitutional allegations are dismissed for failure to state a claim upon which relief can be granted.

## V.    Conclusion

The respondents' Motion for Partial Dismissal, (Docket Entry No. 8), is granted.  Sanchez's claims under 8 U.S.C. § 1503(a), are retained for further proceedings. The other claims are dismissed.

SIGNED on January 24, 2012, at Houston, Texas.

Lee H. Rosenthal
United States District Judge